**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
‗‗‗‗‗‗

No. 11-2307
‗‗‗‗‗‗

ALAN MACFARLAN,
                              Appellant

v.

IVY HILL SNF, LLC. t/d/b/a/ IVY HILL
REHABILITATION AND NURSING CENTER
‗‗‗‗‗‗

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-cv-02246)
District Judge:  Honorable J. Curtis Joyner
‗‗‗‗‗‗

Argued February 6, 2012
Before:  SLOVITER, VANASKIE and GARTH, *Circuit
Judges*.

(Filed: March 29, 2012)

Marc E. Weinstein, Esq. (Argued)
Weinstein Law Firm, LLC
One Northbrook Corporate Center

1210 Northbrook Drive, Suite 280
Trevose, PA 19053

Ralph E. Lamar, IV, Esq.
Law Offices of Ralph Lamar
12570 Meade Court
Broomfield, CO 80020
     *Counsel for Appellant*

Louis J. Capozzi, Jr., Esq.
Dawn L. Richards, Esq. (Argued)
Capozzi & Associates, P.C.
2933 North Front Street
Harrisburg, PA 17110-1250
     *Counsel for Appellee*

———

OPINION OF THE COURT

———

Garth, *Circuit Judge*.

Plaintiff Alan Macfarlan's appeal requires us to review the application of judicial estoppel to his complaint. The District Court judge denied Macfarlan relief as to all counts of his complaint. Primary among the court's rulings was the grant of summary judgment to Macfarlan's former employer, Ivy Hill SNF, LLC ("Ivy Hill") based upon judicial estoppel. We will affirm.

I.

Macfarlan's notice of appeal states that he was appealing only ". . . from the Final Judgment and Order entered on May 12, 2011 denying Plaintiff's Motion for Reconsideration of the District Court's Granting Summary Judgment to Defendant." That motion pertained only to his Count 1 claim under the Family and Medical Leave Act ("FMLA"). Macfarlan also seeks our relief based upon other Acts which refer to his disability and which were the subject of Counts 2-4 of his amended complaint. The main challenge that Macfarlan makes, however, is to the District Court's application of judicial estoppel. We first dispose of two aspects of his appeal which have come to our attention. Ivy Hill raised no objection to either the form of order entered by the District Court or to the limited nature of Macfarlan's Notice of Appeal.

*a. The District Court's order*

On July 28, 2010, the District Court granted summary judgment to Ivy Hill on Counts 2-4 of Macfarlan's amended complaint and on his FMLA retaliation claim, which was part of Count 1. Ivy Hill thereafter filed a motion for reconsideration as to Macfarlan's remaining Count 1 FMLA claim.

In its November 9, 2010 order granting Ivy Hill's motion for reconsideration and entering summary judgment for Ivy Hill, the District Court, among other rulings, granted the defendant, Ivy Hill, summary judgment on Macfarlan's remaining claim based on judicial estoppel, and therefore denied relief to Macfarlan on his entire Count 1 FMLA claim. In the same order, the District Court then ruled that "Count I of Plaintiff's Amended Complaint is DISMISSED."

3

When summary judgment is granted to the prevailing party, it is inappropriate and erroneous to dismiss the very complaint that gave rise to the summary judgment order. While no substantial right of Macfarlan was affected by the form of the District Court's order, nonetheless good practice dictates that the complaint on which judgment is entered cannot and should not be "dismissed." Accordingly, Macfarlan not having been prejudiced by the form of the District Court's order, we now disregard the District Court's order of dismissal and review only the summary judgment disposition, which is the gravamen of Macfarlan's appeal.

### b. The Notice of Appeal

Macfarlan filed a Notice of Appeal only "from the final judgment and order entered on May 12, 2011 denying Plaintiff's motion for reconsideration of the District Court's order granting summary judgment to Defendant." In normal course, we would confine our review to the one issue appealed, i.e. reconsideration of the District Court's order that granted summary judgment to Ivy Hill for alleged violation of the FMLA. However, while Ivy Hill, as noted, did not object to our consideration of the other counts in Macfarlan's amended complaint, and indeed, addressed them in its brief, we *sua sponte* have the obligation of considering and confining an appellant to the issue which he has chosen to appeal. See Elfman Motors, Inc. v. Chrysler Corp., 567 F.2d 1252, 1254 (1977) ("When an appeal is taken from a specified judgment only or from a part of a specified judgment, the court of appeals acquires thereby no jurisdiction to review other judgments or portions thereof not so specified or otherwise fairly to be inferred from the notice as intended to be presented for review on the appeal.").

4

However, we are informed by our precedent in Murray v. Commercial Union Insurance Co., 782 F.2d 432, 434-35 (3d Cir. 1986), that in circumstances comparable to Macfarlan, we will review the arguments of an appellant pertaining to issues not designated in the Notice of Appeal. In Murray, we held that where the parties addressed multiple issues presented to the District Court, but which were not designated in the Notice of Appeal, we could nevertheless review the non-designated issues. Accordingly, Macfarlan's Notice of Appeal, which referred only to an appeal from the District Court's Judgment denying his Motion for Reconsideration, does not preclude us from addressing Macfarlan's other claims which were included in his amended complaint.

## II.

Beginning in 1989, appellant Alan Macfarlan worked as a maintenance director at Green Acres Rehab and Nursing Center ("Green Acres"). On January 24, 2008, Macfarlan had a stroke, and on January 29, entered on leave under the FMLA, which allows eligible employees, of which MacFarlan was one, to take up to twelve weeks of leave due to a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §2612(a)(1).

At the time that Macfarlan entered on leave, Green Acres' human resources director prepared a FMLA request form, which Macfarlan signed. That form noted that Macfarlan's FMLA leave began on January 29, 2008 and that

5

April 8, 2008 was his "[a]nticipated date of return" from leave.[1]

Beginning in February 2008, Macfarlan received short term disability benefits from his insurer, Unum Life Insurance Company of America. On April 1, 2008, Green Acres was purchased by appellee Ivy Hill SNF, LLC and renamed Ivy Hill Rehabilitation and Nursing Care. On April 16, Macfarlan's doctor cleared him to return to work starting on May 1, but with the conditions that he not work more than four hours per day and that he not lift or otherwise move loads in excess of twenty pounds. The administrator of Ivy Hill notified Macfarlan that part-time work was not available, at which time, (April 17, 2008), Macfarlan's doctor cleared him to work full-time, but did not change the lifting restriction.

On or about April 20, 2008, Ivy Hill terminated Macfarlan's employment and notified him of that fact, at the same time informing him that he would not be hired back with any lifting restrictions. From the time of his termination

---

[1] According to Macfarlan, he selected the April 8, 2008 date because he had a doctor's appointment scheduled for that date. When that appointment was later rescheduled to April 16, Macfarlan claims that he notified Green Acres' human resources director. Macfarlan asserts that he was at no point notified that, in spite of the rescheduled appointment, he still needed to return to work by April 8. The District Court never made findings of fact as to whether Macfarlan ever notified Green Acres of the rescheduling, nor as to whether he was ever notified that he would still have to return to work on April 8.

until July 2008, when he was ultimately cleared to work without any restrictions, Macfarlan received disability benefits from Unum, his insurer. Macfarlan was told that once his lifting restrictions had ended, he could reapply for employment with Ivy Hill, which he ultimately did in August 2008. [2] At that time, Macfarlan also stopped receiving disability benefits.

On May 20, 2009, Macfarlan filed a complaint against Ivy Hill. Macfarlan thereafter amended his complaint on June 12, 2009, and drafted a further amendment to which Ivy Hill consented on November 30, 2009. In his amended complaint, Macfarlan raised four counts against Ivy Hill in the District Court: 1) a claim for violation of the FMLA and a retaliation claim for exercising his FMLA rights;[3] 2) a claim for violation of the Rehabilitation Act; 3) a claim for violation of the Americans with Disabilities Act ("ADA"); and 4) a claim for violation of the Pennsylvania Human Relations Act ("PHRA").

On July 28, 2010, the District Court granted summary judgment for Ivy Hill on all claims except Macfarlan's claim for violation of the FMLA. Following a motion by Ivy Hill for reconsideration, the District Court granted summary judgment for Ivy Hill on the remaining cause of action under the FMLA on judicial estoppel grounds. Macfarlan filed a

---

[2] Macfarlan's application was unsuccessful, as during his recovery, Ivy had filled the vacancy created by his termination. Macfarlan does not challenge any element of that employment decision in the present appeal.

[3] Macfarlan does not appeal the District Court's grant of summary judgment on his FMLA retaliation claim.

motion for reconsideration of that order, which was denied on May 12, 2011. Macfarlan timely appealed to this court.

## III.

The District Court had jurisdiction of Macfarlan's suit pursuant to 28 U.S.C. §§ 1331 and 1367(a). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a District Court's grant of summary judgment. Jacobs Constructors, Inc. v. NPS Energy Servs., Inc., 264 F.3d 365, 369 (3d Cir. 2001). We therefore must undertake the same inquiry as the District Court and determine whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material fact is one which "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We must also view the evidence in the light most favorable to Macfarlan (the non-movant) and draw all reasonable inferences in his favor. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

## IV.

Macfarlan's principal contention is that the District Court erroneously invoked the doctrine of judicial estoppel against him when it granted summary judgment to Ivy Hill on Macfarlan's FMLA claim. Macfarlan claimed in the District Court that Ivy violated 29 U.S.C. § 2615(a)(1), which makes "it unlawful for any employer to interfere with, restrain, or

8

deny the exercise of or attempt to exercise, any right provided under this subchapter." Specifically, Macfarlan alleged that by refusing to allow him to return to work on April 17, 2008, once his doctor cleared him to work full-time, albeit with restrictions, Ivy Hill had denied him of his rights under 29 U.S.C. §2614(a)(1), which provides that any employee who takes FMLA leave "shall be entitled, on return from such leave . . to be restored by the employer to the position of employment [previously] held by the employee . . . or . . . to an equivalent position." In order to establish a claim for violation of FMLA rights, an "employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Callison v. Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005).

The District Court denied Macfarlan restoration to his pre-leave position, holding that judicial estoppel precluded him from seeking such restoration. Accordingly, we must determine whether Macfarlan was entitled to his former position under the FMLA. The FMLA does not require "an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his medical leave." Rinehimer v. Cemcolift, Inc., 292 F.3d 375 (3d Cir. 2002). In order for an employee to demonstrate entitlement to restoration, the employee must have been able "to perform the essential functions of the job without accommodation" at the time he sought restoration. Id.

In the District Court, Macfarlan argued that at the time he sought restoration, he was able "to perform the essential functions" of his job despite his physician's restrictions. The District Court concluded that Macfarlan was precluded, by

9

the doctrine of judicial estoppel, from asserting that he was capable of returning to work without accommodation at the end of his FMLA leave in April 2008 because he continued to receive disability benefits from Unum, his insurer, through August 2008. The District Court therefore granted summary judgment for Ivy Hill on Macfarlan's FMLA claim.

Judicial estoppel is a "judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that [he or she] has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996). The doctrine exists "to protect the integrity of the judicial process and to prohibit parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 750 (2001).

In Motley v. New Jersey State Police, 196 F.3d 160, 164 (3d Cir. 1999), this court expressly adopted the Supreme Court's framework from Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999), for the analysis of judicial estoppel when the alleged prior inconsistencies affect subsequent statutory claims. Because the allegedly inconsistent statements in the present case bear on Macfarlan's claim for statutory relief under the FMLA, Motley instructs that we apply the Cleveland framework in our analysis of the District Court's order of judicial estoppel. Under that principle, in order to defeat the application of judicial estoppel, a plaintiff must explain his inconsistent statements in a manner sufficient "to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the

plaintiff could nonetheless" perform the job to which he sought reinstatement. Cleveland, *supra*, 526 U.S. at 807.

We must therefore determine: A) whether Macfarlan made inconsistent representations, and B) if he did so, whether Macfarlan can provide an explanation for his inconsistency from which a reasonable juror could conclude that, despite either the truth of, or Macfarlan's good faith belief in, his statements to Unum, he was nevertheless able to perform the material duties of his regular job while he collected benefits from Unum.

As a threshold matter, Macfarlan contends that the District Court could only draw an inference as to any statements he made to his insurer, and thus had no direct record evidence pertaining to the content of those statements. We cannot agree. One of the undisputed facts submitted as part of Ivy Hill's motion for summary judgment reads, in part: "Plaintiff [Macfarlan] received Short Term Disability Insurance benefits from his Carrier for a period of six (6) months, from February through August, 2008, for the months of January through July, 2008 based on his claims to his Carrier and supporting medical documentation submitted to them on his behalf by his physicians *that he was unable to perform the material duties of his regular occupation*." (Emphasis added.) (A-117). On the basis of that undisputed fact, the District Court had direct record evidence as to the content of Macfarlan's representations to Unum.

Having established that Macfarlan represented himself in that manner, we must determine whether those representations were inconsistent with his present position. Macfarlan represented himself to Unum, his insurance

11

company, as "unable to perform the material duties of his regular occupation." Furthermore, the coverage under which Macfarlan received benefits from Unum explained that Unum "provides you with benefits while you are *unable to perform the material duties of your regular occupation*." (Emphasis added). Macfarlan accepted Unum benefits under coverage for being "unable to perform the material duties of [his] occupation," and represented himself as such. There is therefore no question that he did in fact take the position vis-à-vis his insurer that he was medically unable to perform his occupation's material duties. Macfarlan's present position is wholly inconsistent with that representation, as he now claims that he was *able* to perform those same duties. Therefore, unless Macfarlan provides an explanation for the inconsistency that satisfies the <u>Cleveland</u> framework, as discussed in <u>Detz v. Greiner Industries, Inc.</u>, 346 F.3d 109 (3d Cir. 2003), the District Court's exercise of judicial estoppel was proper.

This court has previously discussed the nature of such explanations, spelling out that

> the plaintiff may not, simply by disavowing a prior claim of total disability, perform an about-face and assert that he is a qualified individual who is capable of working. Rather, . . . the plaintiff must proceed from the premise that his previous assertion of an inability to work was true, or that he in good faith believed it to be true, and he must demonstrate that the assertion was nonetheless consistent with his ability to perform the essential functions of his job. . . .

12

Explanations of the sort Cleveland requires are, in short, contextual – they resolve the seeming discrepancy between a claim of disability and a later claim of entitlement to work not by contradicting what the plaintiff told the [benefits provider], but by demonstrating that those representations, understood in light of the unique focus and requirements of the [benefits provider] leave room for the possibility that the plaintiff is able to meet the essential demands of the job to which he claims a right under the ADA.

Detz, *supra*, 346 F.3d at 118.

Macfarlan explains his inconsistency by arguing that he collected Unum disability benefits only because it was Ivy Hill that had decided that he, Macfarlan, was unable to return to work. He argues that he himself did not represent to Unum that he could not work. Yet the statement that he gave to Unum, and which is undisputed by Macfarlan, is "that he was unable to perform the material duties of his regular occupation." Macfarlan's effort to explain the inconsistency is contrary to the Detz requirement that he treat his original statement as true or as one that he in good faith believed to be true. Just as the District Court did not accept this argument, no more do we, and we hold that Macfarlan's explanation does not satisfy the requirements of Cleveland. The record does not support Macfarlan, as we have pointed out, and we find the same flaw in his argument that the District Court judge did. Macfarlan's statement to Unum "that he was unable to perform the material duties of his occupation" leaves no room for Macfarlan's argument that it was not he

13

that informed Unum that he was impaired, but that it was Ivy Hill that did so. Macfarlan's two claims "crash[] face first against" one another, and the first estops the second. Detz, *supra*, 346 F.3d at 120.[4]

V.

Macfarlan also claims that the District Court erroneously granted summary judgment to Ivy Hill on his Rehab Act, ADA, and PHRA claims. Specifically, Macfarlan claims that the District Court erroneously concluded that Ivy Hill did not consider Macfarlan to be disabled.

As an initial matter, we note that the Rehab Act, ADA, and PHRA ("the Acts") are all to be interpreted consistently, and that all have the same standard for determination of liability. McDonald v. Pa., Dep't of Pub. Welfare, Polk Ctr., 62 F.3d 92, 94-95 (3d Cir. 1995); see also Donahue v. Consol. Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000); Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). To prevail on an action under the Acts, a plaintiff must establish that he is a "qualified individual" with a "disability" who suffered an adverse employment action "because of that disability." Turner v. Hershey Chocolate USA, 440 F.3d 604, 611 (3d Cir. 2006). To satisfy the requirement of having a

_____

[4] On appeal, Macfarlan urges that, even if the District Court's application of judicial estoppel was proper, other judicial remedies could be fashioned. As an illustration, he suggests reimbursing Unum for the benefits received during the period in question. In light of our discussion, we see no need to address this suggestion.

14

"disability," a plaintiff may demonstrate any one of: an actual mental or physical impairment that substantially limits one or more major life activities, a record of such impairment, or that his employer regarded him as having a disability. Marinelli v. City of Erie, Pa., 216 F.3d 354, 359 (3d Cir. 2000).

The District Court concluded, and Macfarlan does not contest, that he had neither an actual impairment that would satisfy the requirements of the Acts nor a record of such impairment. Accordingly, Macfarlan's claims under the Acts rise or fall on the question of whether Ivy Hill regarded him as having a qualifying disability under the Acts. We conclude that the District Court properly found that Ivy Hill did not regard Macfarlan as having such a disability. See Rinehimer, *supra*, 292 F.3d at 382. (Rinehimer, a former employee of Cemcolift, Inc. failed to show that he was disabled under the "regarded as" prong of the Acts).

To demonstrate that an employer regarded an employee as having a qualifying disability, the plaintiff must demonstrate that the employer believed that a wholly unimpaired plaintiff had an impairment that substantially limited at least one major life activity or that the employer believed an employee's actual impairment to limit major life activities when it in fact did not. Tice v. Centre Area Transp. Auth., 247 F.3d 506, 514 (3d Cir. 2001). Macfarlan contends that he falls into the latter category: that of an employee with a non-limiting impairment incorrectly regarded as having an impairment that limited him in at least one major life activity. Specifically, Macfarlan claims that once he was cleared to work fulltime, Ivy Hill incorrectly regarded him, because of his lifting restrictions, as impaired in a manner that

15

substantially limited him in the major life activity of "working."

A "temporary non-chronic impairment of short duration is not a disability covered by the [Acts]." Rinehimer, *supra*, 292 F.3d at 380. Macfarlan's temporary lifting limitations, which were removed only four months after first imposed, are the very definition of such a non-chronic impairment. Accord Colwell v. Suffolk County Police Dept., 158 F.3d 635, 646 (2nd Cir. 1998) (holding that an impairment lasting seven months was too brief in duration to qualify as an ADA-qualifying disability). Because Macfarlan's lifting restriction was not a qualifying disability under the Acts, Ivy Hill's regard of Macfarlan as unable to perform certain of his duties was permissible under the Acts. "It is insufficient for [Macfarlan] to show that [Ivy Hill] thought [he was], in some way, impaired. Rather, [Macfarlan] must show that [Ivy Hill] thought [he was] disabled within the meaning of the statute[s]. The undisputed evidence shows that [Ivy Hill] did not consider [Macfarlan] in any way disabled and would have reinstated [him] immediately if . . . medically qualified." (Internal quotation marks and citations omitted). Wilson v. MVM, Inc., 475 F.3d 166, 179 (3d Cir. 2007).

## VI.

The District Court's July 28, 2010 order granting summary judgment to Ivy Hill on Macfarlan's ADA, Rehab Act, and PHRA claims will be affirmed, as well as its order of May 12, 2011 denying reconsideration of its November 9, 2010 order which had denied Macfarlan relief under the FMLA.

16